UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOHN GORAJCZYK,

       Plaintiff,

v.
                                        Case No. 08-14764
CITY OF ST. CLAIR SHORES, et al.,       Honorable Julian Abele Cook, Jr.

       Defendants.


ORDER

This case pertains to claims by the Plaintiff, John Gorajczyk, who contends that the Defendants,[1] Cathy McCabe, Paul Plaza, Phil Rzotkiewicz, Michael Notorlano, and Margaret Eidt, all of whom were law enforcement officers with the St. Clair, Michigan municipal government during all of the relevant times in this controversy, violated his constitutional right to be free from an excessive use of force, contrary to the specific language within the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983. These allegations relate to the execution of a search warrant at his home in November 2005, in which he contends that the Defendants used excessive force when they allegedly (1) handcuffed him too tightly, (2) forcibly pushed him to the ground, and (3) pulled him up by his arm which, in turn, produced an unwarranted injury.

On April 14, 2010, the Defendants filed a motion to strike the Plaintiff's proposed first

---

[1] Although originally named as a Defendant in this case, the City of St. Clair Shores was voluntarily dismissed from this lawsuit by the Plaintiff on April 13, 2010.

1

amended witness list, asserting that he had failed to comply with the specific requirements in the Federal Rules of Civil Procedure and the dates within Scheduling Order that had been previously issued by the Court. An opposition pleading by the Plaintiff was filed one week later.

On June 1st, the Defendants filed a motion to strike the Plaintiff's proposed expert witness, Joseph Jager. It is their position that Jager's expert report does not conform to the requirements of the Federal Rules of Civil Procedure and the Federal Rules of Evidence. The record reveals that the Plaintiff submitted his opposing brief on July 16th - over one month after the filing of the Defendants' motion. Inasmuch as (1) this tardy filing constitutes a gross violation of the time deadlines within the Local Rules of this District,[2] and (2) the Plaintiff failed to request and obtain an extension of time in which to file an opposing brief, the Court will decline to consider his response when evaluating the merit, if any, of the Defendants' motion.

Finally, the Defendants filed a third motion to strike on June 3rd, seeking to obtain an order from the Court that, if granted, would (1) strike the Plaintiff's designated medical experts, (2) compel his compliance with Fed. R. Civ. P. 26(a)(2), and (3) allow them to depose the Plaintiff's proposed medical experts.

The Court will address each of these three requests seriatim.

I.

In making the request to strike the Plaintiff's first amended witness list, which includes the name of E. Craig Young – who had been added to the witness list approximately four months after the designated deadline of November 6, 2009 – the Defendants assert that the addition of Young

---

[2] E.D. Mich. LR 7.1(e)(2)(B) states that "[a] response to a nondispositive motion must be filed within 14 days after service of the motion."

will preclude them from deposing him in advance of trial because the discovery period has now ended.

The Plaintiff asserts in his response that when the original witness list was submitted, he was under the impression that the three union witnesses would be able to testify about his claims for loss of wages and fringe benefits. He claims that he initially acquired this information on December 14, 2009 (for one witness) and February 1, 2010 (for another witness).

Fed. R. Civ. P. 16(b)(4) states that a scheduling order "may be modified only for good cause and with the judge's consent." The Sixth Circuit Court of Appeals opined in 2002 that the "primary measure" of this good cause requirement is the moving party's diligence in attempting to comply with the court-imposed scheduling order. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002). Here, the Scheduling Order advised the parties that (1) the deadline for identifying all possible witnesses was November 6, 2009, and (2) the close of discovery was February 28, 2010. The record reveals that the Plaintiff's original witness list was filed on November 6, 2009, and subsequently amended to include the name of E. Craig Young. The Court accepts the Plaintiff's representation that he did not learn of the previously-listed union witnesses' inability to testify regarding his lost wages and benefits until December 2009 and February 2010. Therefore, the Court believes that he has shown good cause for his request. Hence, the Defendants' request to strike his witness list is denied. However, in order to avoid an unfair prejudice to the Defendants, the Court declares that they shall have the ability to depose Young at a time to be determined by the parties, but not later than thirty (30) days from the date of this order.

II.

The Defendants next submit that the Court should strike the Plaintiff's proposed expert

3

witness, Joseph Jager, because his report does not comport with the Federal Rules of Civil Procedure and the Federal Rules of Evidence. Specifically, they contend that (1) Jager's report contains an impermissible legal conclusion (to wit, the Defendants used excessive force during the search), and (2) his opinions will not assist the trier of fact in understanding the evidence or determining a fact in issue.

> Fed. R. Evid. 702, which governs the testimony of expert witnesses, states the following:
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In addition, Fed. R. Civ. P. 26(a)(2)(B)(i) requires that the report which must be furnished by the proposed expert to the opposing party in advance of trial "must contain . . . a complete statement of all opinions the witness will express and the basis and reasons for them[.]" Rule 37, in turn, provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Here, Jager's report states that he was asked to review the record in this case to determine if the handcuffing of the Plaintiff (1) was "properly done . . ." and (2) whether excessive force was exercised by the Defendants "in violation of the [F]ourth [A]mendment of the United States Constitution[.]" His report contains a list of all of the documents that he reviewed in composing this report (e.g., deposition testimony, home video taken by the Plaintiff's family after the raid, and police photos), along with a summary of the relevant facts. Finally, the "Opinions" section within

4

his report is divided into two categories: (1) "Notice of Tightness of Handcuffs" and (2) "Injuries."

Initially, the Court determines that Jager's conclusion (i.e., the Plaintiff was subjected to excessive use of force) is an inappropriate role for an expert witness. Although Fed. R. Evid. 704(a) states that an expert may express an opinion that "embraces an ultimate issue to be decided by a trier of fact," his statement is a bare legal conclusion, which addresses the ultimate question of liability in this case. Moreover, Jager's assertion encroaches upon the exclusive province of the jury to make the ultimate determination of liability. *See Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) ("Although an expert's opinion may 'embrace[] an ultimate issue to be decided by the trier of fact[,]' . . . the issue embraced must be a factual one.")

With respect to the first half of Jager's "Opinions" section (i.e., "Notice of Tightness of Handcuffs"), the Court agrees with the Defendants' argument that it consists of a mere recitation of facts from the Plaintiff's perspective. Thus, it is the conclusion of the Court that this portion of Jager's report does not contain opinions which would assist a trier of fact in understanding the evidence.

Finally, the second half of Jager's "Opinions" section (i.e., "Injuries") states the following, in its entirety:

> In reviewing the video taken by the plaintiff on the night of this incident after they were released from custody by the St. Clair Shores Police Department, it appeared to show handcuff marks on John Gorajczyk['s] wrists area and discoloration of his skin. This indicates to me that the handcuffs were applied too tightly on the plaintiff and would cause unnecessary pain and injury to the plaintiff. This is further verified by Dr. JoAnne Levitan, M.D. who indicated in a letter to Dr. Goldberg, dated 1/19/06 that the plaintiff appears to have nerve damage in his wrist and hand area that was caused by the police handcuffing the plaintiff behind his back.

(Def.'s Ex. 1 to Mot. to Strike Plaintiff's Expert Witness, p. 4.)

The Defendants assert that these opinions are conclusory and Jager does not provide a basis

5

and reasons for them, as required by Rule 26. Indeed, "[e]xpert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010). The Court agrees with the Defendants that Jager's opinions do not satisfy this minimum standard. In his report, Jager asserts that he reached this conclusion (i.e., the Plaintiff's handcuffs were "applied too tightly") after reviewing a post-raid home video and reviewing the medical records of Drs. Levitan and Goldberg. However, he has failed to proffer any reasoning for his conclusion. For instance, and despite noting marks and discoloration on the Plaintiff's wrists, Jager does not explain the rationale which led him to his conclusion that the handcuffs were too tight and why it would exclude the possibility that all persons who are handcuffed end up with marks on their wrists.

The Defendants correctly note that Jager did not set forth his knowledge, if any, regarding the proper method of handcuffing people and what physical manifestations can result if handcuffs are applied inappropriately. Therefore, the Court concludes that Jager's report fails to satisfy the minimum requirements of Fed. R. Evid. 702 and Fed. R. Civ. P. 26(a)(2)(B)(i). Therefore, the Court grants the Defendants' motion to strike the Plaintiff's expert witness, Joseph Jager, from testifying for the reasons that have been set forth above.

### III.

The Defendants' third motion seeks to obtain an order from the Court that will (1) strike the Plaintiff's medical experts, (2) compel compliance with Fed. R. Civ. P. 26(a)(2), and (3) permit them to conduct discovery depositions upon his proposed medical experts (i.e., Drs. JoAnn Levitan, Amer Aboukasm, and Thomas McCormick). The Defendants maintain that the Plaintiff's failure to disclose the requisite opinions, exhibits, and qualifications of his expert medical witnesses is

prejudicial to their effort to assert a proper defense in this cause, and effectively prevents each of them from discovering the experts' proposed testimony as well as the basis for their conclusions.

On the other hand, the Plaintiff, while acknowledging that he had not provided the expert reports for these three doctors, states that they are his treating physicians. Hence, he submits that, under this circumstance, none of them are obligated to produce an expert report or other background information pursuant to Rule 26(a)(2).

This evidentiary rule, which governs the disclosure of expert witnesses, provides, in part, that "[u]nless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report - prepared and signed by the witness - *if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.*" Fed. R. Civ. P. 26(a)(2) (emphasis added). In the context of a claim under the Federal Employees Liability Act, 45 U.S.C. § 51 et seq., a panel of the Sixth Circuit Court of Appeals ("Sixth Circuit") determined in 2007 that this Rule does not require the production of an expert report from a treating physician. *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 869 (6th Cir. 2007). In rendering its decision, the Sixth Circuit set forth certain parameters upon which treating physicians could testify about the causation of a claimant's injury in the absence of a Rule 26 Report. *Id.* Additionally, the Court noted that the Advisory Committee Notes to Rule 26 support its conclusion that treating physicians are not required to prepare expert reports. *Id.* ("The Note to Rule 26 states that '[a] treating physician . . . can be deposed or called to testify at trial without any requirement for a written report.'")

In order to prevent a circumvention of the expert report requirement, *Fielden* declared that

"when the nature and scope of the treating physician's testimony strays from the core of the physician's treatment, Rule 26(a)(2)(B) requires the filing of an expert report from the treating physician." *Id.* at 870 (citations omitted). In making a determination on this issue, courts have examined a number of factors, including whether (1) the treating physician reached his conclusions at the time of the treatment, *id.* at 871 (citing *Mohney v. USA Hockey, Inc.*, 138 Fed. Appx. 804, 811 (6th Cir. 2005)); (2) both parties were able to prepare for trial and the outcome of the trial would not be affected by surprise tactics, *id.* (citing *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000)); (3) the "condition at issue leaves room for debate as to the specific ailment and its sources" *id.* (citing *Gonzalez v. Executive Airlines*, 236 F.R.D. 73, 81 (D. P.R. 2006)); (4) the physician would rely on ordinary medical training, *id.* at 872 (citing *Sowell v. Burlingon N. & Santa Fe Ry. Co.*, 2004 U.S. Dist. LEXIS 24738 at *5 (N.D. Ill. Dec. 7, 2004)); and (5) the "treating physician relies on tests, documents, books, videos, or other sources that the physician did not rely upon during his or her treatment of the patient." *Id.* (citing *Mohney v. USA Hockey, Inc.*, 300 F. Supp. 2d 556, 561 (N.D. Ohio 2004)).

The Court first notes that there is no evidence to suggest that these three physicians were hired by the Plaintiff or his counsel for the purposes of testifying at trial. The Defendants submit that without an expert report or a discovery deposition, they do not know whether these physicians relied on ordinary medical training, or if they reviewed additional material to reach their medical opinions. However, the Court concludes that the Defendants, notwithstanding an opportunity to depose these witnesses during the discovery phase of this trial, chose to forego such a discovery

option.[3] Nothing in the medical reports by Drs. Levitan, Aboukasm, or McCormick suggests that they used any outside material or anything above and beyond their ordinary medical training to reach the conclusions they did. Moreover, there is no indication within these medical reports that they came to their conclusions at any time other than at the time of treatment. However, notwithstanding that which is contained in their medical reports, the Plaintiff is advised that to the extent these physicians have in fact reached any of their conclusions by means other than the treatment of the Plaintiff, they must file expert reports and otherwise comply with the requirements of Rule 26(a)(2)(B).

The Defendants also object to the physicians' conclusion regarding the cause of the Plaintiff's injuries (e.g., the handcuffing caused nerve damage). However, as the *Fielden* court concluded:

> It is within the normal range of duties for a health care provider to develop opinions regarding causation and prognosis during the ordinary course of an examination. To assume otherwise is a limiting perspective, which narrows the role of a treating physician. Instead, to properly treat and diagnose a patient, the doctor needs to understand the cause of a patient's injuries. *See McCloughan* [*v. City of Springfield*], 208 F.R.D. [236,] 242 [(C.D. Ill. 2002)] ("doctors do not operate in a vacuum. . . . Thus, the [c]ourt believes causation, diagnosis, and prognosis would be based on the treating physician's personal knowledge. . . .").

*Fielden*, 482 F.3d at 870 (quoting *Martin v. CSX Transp., Inc.*, 215 F.R.D. 554, 557 (S.D. Ind. 2003)). Thus, it is the conclusion of the Court that, under the limited circumstances of this case, the Plaintiff's treating physicians may testify regarding the cause of his injuries, as long as they reached their conclusion in the course of treatment.

---

[3] In addition, the Plaintiff notes that he has scheduled de bene esse depositions for all of these physicians wherein the Defendants will be able to ask questions of these individuals at that time.

9

Moreover, it should be noted that the instant case is distinguishable from the case which has been cited by the Defendants, *Gass v. Marriott Hotel Svcs., Inc.*, 501 F. Supp. 2d 1011 (W.D. Mich. 2007). In *Gass*, the plaintiffs complained that (1) the defendants had negligently allowed the spraying of dangerous chemicals inside their hotel room and (2) their exposure to such chemicals caused them to suffer poisoning and other damages. 501 F. Supp. 2d at 1015. When the plaintiffs proffered the proposed testimony of two physicians, the defendants objected and moved to strike their testimony. *Id.* The district court determined that the two doctors were treating physicians and thus, were not required to file expert reports. *Id.* at 1018. However, the court granted the defendants' motion to strike and relied upon the failure of the plaintiffs to proffer a sufficient scientific foundation. *Id.* at 1021. The court opined that (1) the treating physicians had neither any knowledge about the specific chemicals to which the plaintiffs had been exposed nor had they conducted any diagnostic testing, and (2) there was a lack of scientific literature that linked the plaintiffs' symptoms with an exposure to pesticides. *Id.* Therefore, the court concluded that, although the treating physicians could testify as to the plaintiffs' symptoms, treatment, and diagnosis, they were not qualified to testify about what caused their ailments. *Id.* The *Gass* court struck the causation conclusions of the treating physicians after concluding that they did not have the requisite scientific foundation for reaching those conclusions.

Here, the Defendants moved to prevent the Plaintiff's physicians from testifying because it is their belief that these medical professionals are experts who had failed to proffer the required expert reports. However, as determined by the *Gass* opinion on which the Defendants rely, treating physicians need not file expert reports. Accordingly, the Court concludes that Drs. Levitan, Abouksam, and McCormick are treating physicians who are not required to prepare expert reports.

To the extent the Defendants are challenging the scientific foundation for the physicians' conclusions, the Court concludes that this argument is without merit. Dr. Levitan states in her report that the Plaintiff suffers from "possible residual neuritis along the superficial radial nerve and tendinitis along the flexor carpi radialis tendons from tight bands around the wrists and abnormal positioning." She further advances her belief that "this is related to the handcuffs that were placed on his wrists behind his back." (Pf.'s Resp. to Defs.' Mot. to Strike, Ex. 1.) Unlike the circumstances in *Gass*, where the treating physicians was not aware of the chemicals to which the plaintiffs had been exposed, *see Gass*, 501 F. Supp. 2d at 1021, the medical doctor in this case (i.e., Dr. Levitan) knew that the Plaintiff had been handcuffed. The Court determines that her conclusion regarding the cause of the Plaintiff's injuries had been based on her treatment of him in the regular course of a medical examination. Hence, the Court determines that Dr.Levitan is entitled to render opinion without the necessity of submitting an expert report.

With respect to Dr. Aboukasm, he conducted medical testing of the Plaintiff in April 2006 and concluded that his patient had "bilateral dorsal hands paresthesias since hands [*sic*] cuffing incident in November '05." (*Id.*, Ex. 2.) Further, his medical report to Dr. Levitan, dated June 12, 2006, indicates that the Plaintiff had "developed numbness and tingling sensation over the lateral aspect of the bilateral hands after he was mistakenly cuffed by the St. Clair Shores Police Department. His cuffs were extremely tight according to him. They were having to frequently remove the straps from around the wrist." (*Id.*) One month later, Dr. Aboukasm transmitted another report to Dr. Levitan on July 10, 2006, in which he explained that "this is the result of a local injury to the nerve and the natural history of an injury is to improve with time." (*Id.*). In its review of the Aboukasm written reports, the Court concludes that this medical doctor is precluded from opining

that the Plaintiff was "mistakenly" handcuffed by the Defendants. However, there is nothing else in his medical reports that is objectionable or would require additional scientific foundation or knowledge.

Finally, and with respect to Dr. McCormick, who conducted an Adult Psychiatric Assessment evaluation on September 29, 2008, his report includes a recitation of the events that were relayed to him by the Plaintiff (e.g., his home was raided by police officers in November 2005, he was handcuffed, and now suffers from inability to work, leave his house, memory lapses, etc.). Dr. McCormik diagnosed the Plaintiff as suffering from major bouts of depression, in addition to a post traumatic stress disorder, along with pain in his wrist and thumb. Like Drs. Levitan and Aboukasm, Dr. McCormick made his diagnosis on the basis of the information that had been obtained from the Plaintiff. Although it would be inappropriate for Dr. McCormick to conclude that the incident of November 2005 was wrong, unjustified, or unlawful, he could - consistent with the ordinary course of a medical examination and treatment - testify about the conditions which may have caused the Plaintiff's maladies.

Therefore, the Court denies the Defendants' request to strike medical experts, compel their compliance with Rule 26(a)(2)(B), and to compel discovery only depositions.

IV.

Accordingly and for the reasons that have been stated above, the Court (1) grants in part, denies in part, the Defendants' motion to strike the Plaintiff's proposed first amended witness list which includes the addition of E. Craig Young as a witness (Doc. #26); (2) grants the Defendants' motion to strike the Plaintiff's expert witness, Joseph Jager (Doc. #32); and (3) denies the Defendants' motion to strike medical experts, compel their compliance with Rule 26(a)(2)(B), and

to compel discovery only depositions (Doc. #33).

      IT IS SO ORDERED.

Dated: August 17, 2010                          s/Julian Abele Cook, Jr.
      Detroit, Michigan                   JULIAN ABELE COOK, JR.
                                               United States District Court Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on August 17, 2010.

                                                              s/ Kay Doaks
                                                              Case Manager