UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN GORAJCZYK,

       Plaintiff,

v().

CITY OF ST. CLAIR SHORES, et al.,

       Defendants.

Case No. 08-14764
Honorable Julian Abele Cook, Jr.

ORDER

This is a lawsuit which was initiated pursuant to 42 U.S.C. § 1983 by the Plaintiff, John Gorajczyk,[1] who has accused the City of St. Clair Shores, Michigan ("St. Clair Shores") and five of its police officers, Cathy McCabe, Paul Plaza, Michael Notorlano, Margaret Eidt, and Phil Rzotkiewicz,[2] of violating his civil rights. In his second amended complaint, Gorajczyk generally complains that (1) these officers used excessive force by handcuffing him too tightly during the execution of an authorized search warrant at his home, (2) that Defendant Plaza used excessive force by pushing him into his home and pulling him back to his feet from his shoulder, and (3) the municipal government of St. Clair Shores failed to properly train its law enforcement officers.

Following a denial of these accusations by the Defendants, they filed a motion for the entry

---

[1] John Gorajczyk is a fifty-four year old man who lives with his wife of twenty-four years - Michelle Gorajczyk - and their two children, Kaitlin and Joseph.

[2] These law enforcement officers were sued in their individual and official capacities.

of a summary judgment, asserting that there are no remaining issues of a material fact to be resolved in this controversy. On April 13th of this year, Gorajczyk filed a response in opposition to the Defendants' request for relief. On the same date, he voluntarily dismissed St. Clair Shores as a Defendant with prejudice. The remaining Defendants replied in their individual capacities on April 29th, contending that they are entitled to qualified immunity with respect to Gorajczyk's remaining excessive force claims.[3] The qualified immunity issue is now before this Court for its evaluation.

I.

This case revolves around the events of November 16, 2005, when several St. Clair Shores police officers, acting upon a facially valid warrant, traveled to Gorajczyk's home ( 27100 Jefferson Ave. in St. Clair Shores, Michigan) to search for suspected narcotics (marijuana). Shortly after their arrival, Gorajczyk was immediately arrested, handcuffed, and detained while the other officers entered and secured the home.[4] Gorajczyk maintains that, despite his vigorous complaints about the injurious effect of the handcuffs on his wrists throughout this involuntary detention period, the officers ignored his pleas.[5] Notwithstanding his contentions, the officers - some of whom allegedly passed directly in front of Gorajczyk while he remained handcuffed - denied having heard any cries by him for assistance. Incorporated within his complaints over the handcuff issue, Gorajczyk asserts

---

[3]Although there was some indication that Gorajczyk had also pursued claims of property damage, he has since abandoned these claims.

[4]Following his arrest, Gorajczyk's son and daughter were also handcuffed and detained by the arresting officers. A family friend, Marissa Waldorf, who was visiting Kaitlin Gorajczyk at the time of the entry into the home by the Defendants, was handcuffed and detained as well. Gorajczyk's wife, who arrived at their home approximately forty five minutes after the raid had begun, was also handcuffed and detained.

[5]All of the occupants of the house- with the exception of the arresting officers - support Gorajczyk's argument that he repeatedly sought relief from the pain caused by the handcuffs.

that he was also manhandled by the officers as they clumsily attempted to move him from the front porch of his home into the living room. In the course of their efforts to effect the move, Gorajczyk claims that he was pushed by the officers in an ostensible effort to make him move faster into the house which, in turn, caused him to trip on the door threshold and fall on his hip. After falling, Defendant Paul Plaza pulled him back up by an arm which, according to Gorajczyk, caused the handcuffs to become even tighter. According to Gorajczyk, this encounter with the officers severely aggravated his left shoulder which caused him to undergo a repair of his rotator cuff, and sustain subsequent medical costs.

I.

In 1986, the Supreme Court declared that "[o]ne of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . . " *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Nevertheless, the Court should only render such a judgment if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one which "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is genuine if it "may reasonably be resolved in favor of either party." *Id.* at 250.

The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 323. Once this requirement has been met, the responsibility shifts back to the non-moving party to act affirmatively in order to avoid the entry of a summary judgment. Fed. R. Civ. P. 56(e). He must respond with evidence that generates more than a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 252. Instead, there must be evidence on which a jury could reasonably find for the non-movant. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000) (citing *Anderson*, 477 U.S. at 252).

In applying these standards, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. The evidence and all reasonable inferences must be construed in the light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 587 (citation omitted). As such, the Court must examine the pleadings and the evidence in the light that is most favorable to Gorajczyk. Fed. R. Civ. P. 56(c); see *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992) (quoting Anderson, 477 U.S. at 255). Thus, his "version of any disputed issue of fact . . . is presumed correct." *Eastman Kodak Co.*, 504 U.S. at 456.

II.

Initially, the Court concludes that the Defendants are entitled to the entry of a summary judgment with respect to Gorajczyk's claims against them in their official capacities. The official record in this cause indicates that Gorajczyk voluntarily dismissed his claims the City of St. Clair Shores on April 3, 2010. As such, his accusations against these law enforcement officers in their official capacities must also be dismissed because such allegations are equivalent to a claim that has been leveled by him against the City of St. Clair Shores. *See, e.g., Jackson v. Shelby County Gov't.*, Case No. 07-6356, 2008 U.S. App. LEXIS 24045, at *2 (6th Cir. Nov. 10, 2008) ("[T]he district court properly granted summary judgment to the defendants on the claims against the sheriff in his

official capacity because those claims mirror the claims against the County, and are therefore redundant."); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

III.

In order to prevail on his claim under 42 U.S.C. § 1983, Gorajczyk is required to plead and prove two essential elements: the Defendants (1) deprived him of a right, privilege, or immunity that has been secured to him by the United States Constitution, federal statute, or other federal law; and (2) caused the alleged deprivation while acting under color of state law. *Sigley v. City of Parma Heights,* 437 F.3d 527, 533 (6th Cir. 2006). There is no dispute in the instant case that the officers were acting under color of state law at the time of the incident.

Gorajczyk claims that each of the Defendants violated his Fourth Amendment rights by using excessive force during the raid on his home. When an excessive force claim arises in the context of an arrest or an investigatory stop, it is most properly characterized as one that invokes the protections of the Fourth Amendment, which guarantees the constitutional right "to be secure . . . against unreasonable . . . seizures." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Thus, Gorajczyk's claim that law enforcement officers used excessive force must be analyzed under the Fourth Amendment and its "objective reasonableness" standard. *Id.* at 395.

Excessive force claims should be analyzed in segments to determine if the officers' alleged conduct was objectively reasonable at each stage of the encounter. *See Dickerson v. McCellen*, 101 F.3d 1151, 1161-62 (6th Cir. 1996). Gorajczyk's claims in the present case will be analyzed in three separate segments:

> [1] Defendant Paul Plaza [used] excessive force when he pushed [Gorajczyk] from behind while [Gorajczyk] was handcuffed behind his back causing [Gorajczyk] to

5

> trip and fall onto his right hip[;]

(Pl's Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. 23.)

> [2 Plaza] yanked [Gorajczyk] up and backwards by his left arm injuring [his] left shoulder[;]

(*Id*.) and,

> [3] All Defendant police officers . . . fail[ed] to check and loosen [Gorajczyk's] handcuffs when he complained numerous times . . . result[ing] in [Gorajczyk] suffering permanent radial nerve damage and aggravation of carpal tunnel syndrome.

(*Id*. at 20.)

The Defendants assert that they are entitled to qualified immunity for all of Gorajczyk's excessive force claims. When qualified immunity applies, it is a defense - not just against liability, but against the lawsuit itself. *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (citations omitted). The doctrine of qualified immunity protects those government officials who perform "discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

To determine whether or not a government official is entitled to qualified immunity, the Court must follow a two-step inquiry as follows:[6]

---

[6] The Sixth Circuit has periodically articulated a third step, in which the Court must determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *See, e.g., Sample v. Bailey*, 409 F.3d, 689, 696 (6th Cir. 2005) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)); *Moldowan*, 578 F.3d at 375 (quoting *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir 1999)). Nevertheless, because in excessive force cases, the district court must determine whether the defendant's conduct was objectively unreasonable, "the third step is redundant." *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009) (applying a two-step qualified immunity analysis in an excessive force case) Therefore, the Court will adhere to the two-step framework in *Binay*.

> First, [the court must] consider whether [t]aken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right. If the answer is yes, next [the court should] ask whether the right was clearly established in light of the specific context of the case.

*Binay v. Bettendorf*, 601 F.3d 640, 646-47 (6th Cir. 2010) (quotation marks and internal citations omitted). However, while the sequence of this two-step inquiry is often appropriate, it is no longer mandatory. *Id*. (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001))).

"Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009) (quoting *Silberstein v. City of Dayton*, 440 F.2d 306, 311 (6th Cir. 2006)). "If a plaintiff fails to show either that a constitutional right was violated or that the right was clearly established, [he] will have failed to carry [his] burden." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). The burden is high because qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"Even at the late stage of summary judgment, the qualified immunity analysis remains a question of law for a judge to decide." *Fettes v. Hendershot*, No. 08-4419, 2010 U.S. App. LEXIS 8784, at *9 (6th Cir. Apr. 27, 2010). Thus, "[w]hether there is a genuine issue of material fact is immaterial to a qualified immunity analysis because the court assumes the facts are as the plaintiff alleges." *Id*.

A.

First, Gorajczyk asserts that Defendant Paul Plaza used excessive force when (1) he was

pushed through the breezeway,[7] which, in turn, caused him to trip and fall on his hip, and (2) he was pulled back up.  However, assuming, *arguendo*, that Plaza used excessive force while escorting Gorajczyk into the home, he is still entitled to qualified immunity because this Plaintiff cannot satisfy the second prong of the qualified immunity inquiry.  Inasmuch as Gorajczyk's claim fails under the second prong, an analysis under the first is unnecessary.  *See Chappell*, 585 F.3d at 907 ("If a plaintiff fails to show either that a constitutional right was violated or that the right was clearly established, [he] will have failed to carry [his] burden.").

The second prong focuses on "whether the officer had fair notice that [his] conduct was unlawful."  *Brosseau v.Haugen*, 543 U.S. 194, 198 (2004).  *Brosseau* identifies two possible approaches to this question; to wit,  (1) "[I]n an obvious case, [generalized] standards can 'clearly establish' the answer, even without a body of relevant case law."  *Id*. at 199 (citing *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)). Otherwise, (2) the violation must be apparent based on the officer's failure to adhere to a "particularized" body of precedent that "squarely governs" the case.  *Id*. at 199-201.  Stated differently, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson*, 483 U.S. at 640.

To determine whether a constitutional right is clearly established, the Court must look to binding precedent of (1) the Supreme Court, (2) the Sixth Circuit Court of Appeals, or (3) itself.  *Barret v. Stubenville City*, 388 F.3d 967, 972 (6th Cir. 2004) (citation omitted).

In the present action - even accepting that all of Gorajczyk's factual allegations establish a violation of the Fourth Amendment by Plaza, it is not an "obvious" case that would provide notice

---

[7]A "breezeway" is described in the Merriam-Webster dictionary as "a roofed open passage connecting two buildings (as a house and garage) or halves of a building."

to an officer that his conduct was unconstitutional. Gorajczyk concedes that Plaza was pushing him into the house to make him "go faster," and that he "tripped" or "stumbled" on the breezeway threshold. (Gorajczyk Dep. 336: 4-9; 332: 8-15). "The Fourth Amendment addresses 'misuse of power,' not the accidental effects of otherwise lawful government conduct." *Brower v. Inyo County*, 489 U.S. 593, 596 (1989) (internal citations omitted). Moreover, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a [suspect's] constitutional rights." *Oklahoma City v. Tuttle*, 471 U.S. 808, 817 n. 4 (1985). Similarly, when Plaza pulled Gorajczyk back up by grabbing his left arm, this action was not obviously unlawful. Even if Plaza could have been gentler, "the reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." *Illinois v. Lafayette*, 462 U.S. 640, 647 (1983).

Therefore, Gorajczyk must identify Plaza's failure to adhere to a more "particularized" body of precedent that "squarely governs" the present case. *See Brosseau*, 543 U.S. at 199-201. In his response to the Defendants' motion for summary judgment, Gorajczyk identifies three cases involving excessive force claims in which the Sixth Circuit Court of Appeals denied qualified immunity. First, he cites, *Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394 (6th Cir. 2009), for the general proposition that "an officer may not use additional gratuitous force once a suspect has been neutralized." *Id*. at 408. In *Morrison*, the defendant officer repeatedly pushed the plaintiff's face into the ground after she was handcuffed, lying down, and compliant with the officer's commands. *Id*. at 407. The officer's alleged behavior represented "gratuitous violence." *Id*.

Similarly, the second case cited by Gorajczyk, *Baker v. City of Hamilton*, 471 F.3d 601 (6th Cir. 2006), also recognized that a suspect who poses no threat to a police officer has a "clearly

9

established right to be free from gratuitous violence during an arrest." *Id*. at 608 (citation omitted). In *Baker*, the defendant officer allegedly struck the plaintiff on his head and knee with a baton after one of the plaintiffs had surrendered. *Id*. at 607. In the Sixth Circuit's view, the fact that the defendant officer struck a blow to the head to the other plaintiff was also "significant," because the head is "such a sensitive and vitally important" part of the body. *Id*. at 609.

Finally, in *Phelps v. Coy*, 286 F.3d 295 (6th Cir. 2002), the defendant officers "proceeded to slam [plaintiff's] head into the floor at least three times" after plaintiff had been neutralized. *Id*. at 298. The force used was gratuitous because "there was simply no governmental interest in continuing to beat [plaintiff] after he had been neutralized." *Id*. at 301.

Gorajczyk - who bears the burden of refuting Plaza's claim of immunity - has failed to proffer any authority which clearly establishes that an officer violates the Fourth Amendment when he pushes a handcuffed suspect in order to facilitate a seizure. Taken together, *Morrison*, *Baker*, and *Phelps,* support the principal that gratuitous violence against a neutralized suspect constitutes excessive use of force, but none of the cases cited by Gorajczyk squarely govern Plaza's conduct in the case at hand. Plaza's use of force was not gratuitous - by Gorajczyk's own admission- because the push was designed to move him into the home. Moreover, there is no evidence that Plaza struck or beat Gorajczyk after he was handcuffed. Rather, Gorajczyk was pushed into the house, and after stumbling on the threshold, Plaza pulled him back to his feet. Finally, based on Gorajczyk's testimony, Plaza did not target a "sensitive" or "vital" part of his body as did the defendant in *Baker*. At most, Plaza's conduct falls in the "hazy border between excessive and acceptable force" that qualified immunity is designed to protect against. *See Saucier*, 533 U.S. at 206.

Likewise, Plaza's conduct was not clearly unlawful when he grabbed Gorajczyk's left arm

and pulled him up. There is no evidence that Plaza was aware of any preexisting injury to his detainee's shoulder, or that the force used by him to lift Gorajczyk to his feet was not gratuitous. In some cases, the Sixth Circuit has found an officer's conduct to be unconstitutional when the officer pulls a suspect backward off the ground by the arm, but only when the officer was aware of an injury beforehand. In *Jones v. Garcia*, 345 Fed. Appx. 987, 989 (6th Cir. 2009), the defendant officer was denied qualified immunity because it would have been "objectively unreasonable" to pull the plaintiff up by using only the injured arm of the detainee who had specifically advised the officer of the pre-existing injury. *Id*. at 990. A similar result followed in *Solovy v. Morabito*, No. 09-1555, 2010 U.S. App. LEXIS 8785, * 1 (6th Cir. Apr. 27, 2010). In *Solovy*, the Court reasoned that the method employed by the defendant to pull a suspect off the ground was "almost guaranteed to cause substantial pain, especially to a person with a shoulder injury." *Id*. at *16. The Sixth Circuit emphasized that prior to the officer's action, "the suspect [had] warned the officer that [his arm was injured]." *Id*. at *19-20.

In contrast and based on Gorajczyk's version of the facts in the present case, there was no clearly established law to put Plaza on notice that pulling Gorajczyk up by the arm, when he had no knowledge of Gorajczyk's injuries prior to pulling him off of the ground, was an unconstitutional use of force. Moreover, there is nothing on the record to suggest that Plaza's pull was gratuitous or violent, because it affected the same legitimate police purpose as the push, which was to move Gorajczyk into the home.

The entry of a summary judgment on the basis of a qualified immunity defense is appropriate if and when the law does not put a governmental official on notice that the challenged conduct is clearly unlawful. *Saucier*, 533 U.S. at 201. Accordingly, inasmuch as Gorajczyk has failed to

11

proffer any authority which demonstrates that Plaza should have been on notice that his conduct was unconstitutional, the Court grants the Defendants' motion on Gorajczyk's claims of excessive force with respect to the injuries suffered by him as a result of (1) falling after being pushed by Plaza and (2) being pulled up off of the ground by his shoulder.

B.

Gorajczyk's next claim of excessive force stems from the placement of handcuffs on his wrists by Plaza, and the other Defendants' ignoring his requests to loosen them. The Sixth Circuit has recognized that claims of excessive force "can be maintained for cuffing an individual's wrists too tightly." *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (citations omitted). However, not all allegations of tight handcuffing amount to excessive force. *Fettes*, 2010 U.S. App. LEXIS 8784 at *12. In order for an excessive force claim based on unduly tight handcuffing to survive a motion for summary judgment, "a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he complained about the tightness of the handcuffs, (2) the officer[s] ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Morrison v. Bd. of Trs.*, 583 F.3d 394, 401 (6th Cir. 2009) (citing *Lyons*, 417 F.3d at 575-76).

*Paul Plaza*

In light of *Morrison*, Gorajczyk's handcuffing claim against Plaza must survive the Defendants' summary judgment motion. First, Gorajczyk testified that he complained to Plaza that the handcuffs were too tight as soon as they were placed on his wrists. Second, Gorajczyk asserts that Plaza ignored his complaint. As to *Morrison*'s third requirement, Gorajczyk claims that (1) the handcuffs caused an actual physical injury ; i.e., radial nerve damage to his thumbs and index

12

fingers and (2) his carpal tunnel syndrome has been aggravated, according to the medical assessments of two physicians.

Moreover, Gorajczyk's right to be free from excessively tight handcuffing was clearly established at the time that Plaza is alleged to have handcuffed him too tightly. The Sixth Circuit had declared as early as 2001 that such a right is clearly established for qualified immunity purposes. *Kostrzewa*, 247 F.3d at 641.

The Defendants take the position that Gorajczyk never complained about his handcuffs being too tight, and also dispute his claim that the handcuffs caused his wrist injury. At best, they have identified genuine issues of a material fact that a jury must resolve. A reasonable jury could credit Gorajczyk's testimony, and because the right Plaza is alleged to have violated was clearly established at the time of the incident, the Court denies the entry of a summary judgment as it relates to this excessive force claim against Plaza.

### *Phil Rzotkiewicz, Cathy McCabe, and Margaret Eidt*

Turning to Gorajczyk's claim against the Defendants Rzotkiewicz, McCabe, and Eidt, the Court reaches the same result. Even though Gorajczyk does not allege that these Defendants had any involvement in the actual handcuffing incident, they could be held liable if they (1) were aware that the handcuffs were too tight and (2) failed to act. *See Grooms v. Dockter*, 1996 U.S. App. LEXIS 3444 at *6 (Jan. 23, 1996) (no qualified immunity even though officer did not physically place the handcuffs on the plaintiff because "a police officer, even if he is not a supervisor, has a duty to try to stop another officer who summarily punishes a person in the first officer's presence.") "[O]fficers present during a violation of a person's civil rights who fail to stop the violation can be liable under § 1983." *Sargent v. City of Toledo Police Dep't*, 150 Fed. App'x. 470, 474 (6th Cir.

13

2005) (citing *Smith v. Heath*, 691 F.2d 220, 224-25 (6th Cir. 1988)). Liability will attach "when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Smoak v. Hall*, 460 F.3d 768, 784 (6th Cir. 2006) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).

The Defendants have already conceded that they had the opportunity and the means to check the tightness of Gorajczyk's handcuffs: "Each officer testified that had Plaintiff complained, they would have checked the cuffs to determine that they were adequately secured without causing unnecessary pain." (Defs.' Mot. for Sum. J. at 18.) The Defendants' sole argument for summary judgment is that they were not aware of Gorajczyk's complaints that his handcuffs were too tight. Gorajczyk alleges that he complained to Rzotkiewicz, McCabe, and Eidt and that they simply ignored his complaints. At minimum, this allegation creates a genuine issue of a material fact as to whether any of these Defendants were aware that excessive force was being used. A disputed issue of fact remains with regard to whether any of them were aware that Gorajczyk's handcuffs were excessively tight, and because the right to be free from excessively tight handcuffs was clearly established at the time of the alleged violation, *Kostrzewa*, 247 F.3d at 641, the Court denies the Defendants' request for a summary judgment as it relates to this specific part of Gorajczyk's handcuffing claim against Defendants Rzotkiewicz, McCabe, and Eidt.

### *Michael Notorlano*

Finally, the Court grants a summary judgment as it relates to Gorajczyk's claim against Notorlano. An examination of the official record indicates that Gorajczyk has failed to produce more than a "scintilla" of evidence which shows that Notorlano heard him complain about the handcuffs. *See Anderson*, 477 U.S. at 248. Gorajczyk's evidence fails to identify Notorlano as one

of the officers who ignored his complaints. In Gorajczyk's response to the Defendants' motion for summary judgment, he advances no more of an accusation that Notorlano passed through the living room "several times while the family was detained." Applying *Smoak*, Notorlano could only be liable if he heard Gorajczyk complain. To the contrary, Gorajczyk has only established that Notorlano was one of several officers who happened to pass through the living room during the search. There is no claim that he complained about his handcuffs when Notorlano passed through the living room. Thus, even drawing all inferences in Gorajczyk's favor, there is simply not enough evidence for a reasonable fact finder to conclude that Notorlano heard Gorajczyk complain. Therefore, Gorajczyk has not established that Notorlano violated his right to be free from the excessive use of force. Hence, Notorlano is entitled to qualified immunity on this issue. Accordingly, the Court grants a summary judgment as to Gorajczyk's claim against Notorlano.

V.

Therefore, the Court holds that Plaza's use of force to escort Gorajczyk into the home, by (1) pushing him and causing him to trip and fall and (2) pulling him up off of the ground, did not violate a clearly established constitutional right. Hence, Plaza is entitled to qualified immunity on that issue.

As to the tight handcuffing claim, the Court finds that four of the Defendants (Plaza, McCabe, Rzotkiewicz, and Eidt) are not entitled to qualified immunity because Gorajczyk has presented enough evidence for a reasonable finder of the facts to conclude that they violated the Plaintiff's clearly established right to be free from excessively tight handcuffing.

Finally and with respect to the same handcuffing claim, the Court determines that Gorajczyk has not offered sufficient evidence which would demonstrate that Notorlano was aware of this

potential constitutional violation. Hence, Notorlano is entitled to qualified immunity.

Accordingly, the Court grants in part, and denies in part, the Defendants' motion for a summary judgment.


IT IS SO ORDERED.


Dated: August 31, 2010            s/Julian Abele Cook, Jr.
       Detroit, Michigan            JULIAN ABELE COOK, JR.
                                                            United States District Court Judge


CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on August 31, 2010.

                                                                  s/ Kay Doaks
                                                                  Case Manager